No. 6336.

THE LLANO CATTLE COMPANY *v.* T. J. FAUGHT.

1. TAXATION.—Personal property, belonging either to a corporation or a natural person, must be assessed and the taxes thereon paid in the county where it is situated, unless such county has not been organized, in which event the assessment must be made and the taxes collected in the county to which it is attached for judicial purposes.

2. UNORGANIZED COUNTIES.—The Legislature of Texas has almost uniformly treated an unorganized county as part of the county to which it is attached for judicial purposes, so far as the exercise of local governmental power over it is concerned.

APPEAL from Scurry. Tried below before the Hon. J. V. Cockrell.

*Pendleton, Chapman & Powell,* for appellant:   The authority to tax must be strictly construed.   (Cooley on Tax., 209; Blessing v. Galveston, 42 Texas, 642.)

The general rule is that, in the absence of a statutory provision, personal property owned by a resident of this State is taxable at the domicile of the owner; but when the owner is a non-resident of this State, residence for the purpose of taxation will probably be presumed to be in the county where the property is situated; citing Cooley on Taxation, 269–273; 56 American Decisions, 497; 13 American and English Corporation Cases, 255; 56 American Reports, 741; Jenkins v. California Stage Company, 22 California, 538.

The statute providing for the collection of taxes on property in unorganized counties does not authorize the collection of taxes on personal property of non-residents of such counties. (Gen. Laws, 1879, ch. 133, p. 141.)

*R. H. Looney,* for appellee:   All property whether owned by persons or corporations shall be assessed for taxation, and the taxes thereon paid in the county where such property is situated, citing Constitution, article 8, section 11.

Personal property situated in an unorganized county is subject to taxation in the organized county to which such unorganized county is attached for judicial purposes.   (Hardesty v. Fleming, 57 Texas, 395.)

In order to relieve a non-resident from the payment of taxes, on cattle which he holds in an unorganized county, and where he keeps hands, a camp and outfit for the purpose of keeping and holding his cattle, he must show that the taxes on such cattle are lawfully assessed and paid elsewhere.   (Revised Statutes, art. 4676; Hardesty v. Fleming, 57 Texas, 395.)

WILLIE, CHIEF JUSTICE.   The appellant company was owner of a stock of cattle in Garza county, its principal office being in the county of Tarrant.   The taxes to which the cattle were liable had been duly assessed, and the sheriff of Scurry county, to which Garza was attached for judicial purposes, was proceeding to collect these taxes when restrained by a writ of injunction sued out in this case.   Upon final hearing this injunction was dissolved, and from this judgment of the court the present appeal is taken.   The only question is as to the right of the tax collector of Scurry county to enforce the payment of

taxes due upon property in Garza county, it being admitted that the property had been duly and legally assessed.

Our Constitution and statutes provide that every kind of property situated within the State and not specially exempted by law should be taxed according to its value; and they lay down the general rule that the assessment and collection of taxes upon property shall take place in the county where it is situated. (Const., art. 8, secs. 1 and 11; Rev. Stats., arts. 4669, 4673, 4676; Laws of 1879, chap. 50, sec. 1.)

The Constitution, however, allows the Legislature by a two-thirds vote to authorize non-residents of counties to pay their taxes at the office of the Comptroller of Public Accounts, and positively requires that non-residents of unorganized counties shall have their lands lying in such counties assessed and the taxes thereon paid at the office of the Comptroller. (Art. 8, secs. 11 and 12.)

The Constitution also requires that . property subject to taxation and owned by residents of unorganized counties, shall be assessed and the taxes thereon paid in the counties to which such unorganized counties are attached for judicial purposes.

This provision, as well as that relating to lands lying in such counties and belonging to non-residents thereof, the Legislature carried out by an act approved April 22, 1879.

No special provision of either organic or statutory law prescribes the place where personal property belonging to a non-resident individual, or corporation such as the appellant, shall be assessed and the taxes thereon collected. Such property is therefore left to be governed by the general rule that all property must be taxed in the county where situated. Indeed, it would require special legislation, adopted by a two-thirds vote, to authorize the payment of such taxes at any other place, and then only at the office of the Comptroller; and the power to have the assessment done elsewhere than in the county where the property is situated is withheld from the Legislature.

The requirement that the property shall be assessed and the taxes thereon paid in the county where it is situated can not be literally complied with in case of an unorganized county, if by being taxed in the county is meant an assessment and collection by officers who reside and have their offices therein. This duty must necessarily be performed by the officer of some other county authorized to discharge these functions in the unorganized county. The Constitution itself recognizes the propriety

of having the taxes of an unorganized county assessed and paid in the county to which it is attached for judicial purposes. It requires the taxes of residents of such counties to be there assessed and paid, doubtless for the convenience of the taxpayer as well as the benefit of the county entitled to receive and disburse the tax money.

The reason it did not specially require the taxes of non-residents upon personalty to be paid there also was, no doubt, because it wished to leave the Legislature free as to them to exercise the power granted in the first section, i. e., to authorize the payment of these taxes at the office of the Comptroller. The Legislature, however, has not thought proper to exercise this power, and the collection must take place where the assessment is required to be made, viz., in the county where the property is situated.

Our Legislature has almost uniformly treated an unorganized county as part of the county to which it is attached for judicial purposes, so far as the exercise of local governmental powers over it is concerned. For instance, it has given to the commissioners court of the latter county power to appoint a justice of the peace and a constable for the county so attached to it. (Laws 1879, p. 89.) It has formed the unorganized county into an election precinct, and given the commissioners court of the other the same supervision over its elections as over those in their own county. (Laws 1881, p. 97.) It has provided that a county attached to another for judicial purposes shall be also attached for election purposes to some one of the precincts of the organized county, and be entitled to vote for the commissioner of that precinct. (Laws 1885, p. 89.) It gives the superintendence of the organization of such a county into the hands of the commissioners court of the county to which it is allotted for judicial purposes. (Rev. Stats., art. 672.) And in the latter county it requires all conveyances of lands lying in the unorganized county to be recorded. (Laws 1881, p. 72.)

These are legislative recognitions of the right of the county to which the unorganized county is attached for judicial purposes to exercise powers over the other than those of a strictly judicial character. For all the purposes mentioned in the above acts the unorganized county becomes under the jurisdiction of that to which it is attached, and the officers of the latter exercise the same authority over its citizens and property as over those of their own county, and the two counties are subjected

to the same local government.  But the Legislature has gone
further.  It has recognized the right of the tax officers of one
county to assess and collect taxes due upon property lying in
the other.  It has enacted that when an unorganized county
may become organized, it shall be the duty of the person in
charge of the assessor's roll in the county to which such unor-
ganized county has been attached for judicial purposes to allow
such person as the commissioners court of the new county may
appoint for that purpose access to such rolls for the purpose of
making a transcript therefrom.  And it is made the duty of the
person so appointed to make two transcripts of the unpaid as-
sessments, both on person and property, in that portion of the
county included within the limits of the former unorganized
county.  These rolls must be .verified by the collector of the
county to which the unorganized county has been attached.
The collector of the new county from these rolls collects the
taxes on property situated therein.  (Acts 1885, chap. 112.)

Thus it was in the contemplation of the Legislature that the
assessor of the one county would assess the taxes of the other;
would list the taxes of both upon the same rolls, and the col-
lector of the same county would have these rolls in possession
for the collection of the taxes.  It is true that the same act
contemplates that the rolls for the unorganized county may be in
the county from which it was detached.  This would be the case
where the taxes assessed upon property lying in the unorganized
county when it formed a part of the parent county had never
been collected before the former was severed from the latter.
But after it has been attached for judicial purposes to another
county, the statute evidently intends that the assessment shall
take place in the latter.  We find no provision of law for taking
transcripts from the rolls of any other county for the benefit of
the new county; hence it was not contemplated that any other
county should assess and collect taxes upon its personal prop-
erty.

In the case of Hardesty v. Fleming, 57 Texas, 395, this court
subjected the personalty of a non-resident situated in an unor-
ganized county to assessment and a collection of the taxes due
upon the same in the county to which it was attached for judi-
cial purposes.  It is true no point was raised as to this, all par-
ties seeming to concede that the taxes, if due at all, were due
to that county; but, if they were not, it was a fundamental
error, and, as this court did not notice the point, that decision

may be treated as authority on the question. We think that the constitutional provision requiring all property not specially exempted to be taxed, and all personalty to be taxed in the county where it is situated, can not be fulfilled as to this species of property situated in unorganized counties, without an assessment and collection in the county to which the unorganized county is attached for judicial purposes. We think, further, that the statutes contemplate this as the place of its taxation. The judgment below, being in accordance with these views, is affirmed.

*Affirmed.*

Opinion delivered October 21, 1887.