OGBURN v. WARD COUNTY IRR. DIST. NO. I. (No. 735–4328.)

(Commission of Appeals of Texas, Section A. Feb. 10, 1926.)

Waters and water courses ☞231—Irrigation district taxes appraised in disregard of Constitution and laws not recoverable, though owner did not apply to equalization board (Const. art. 8, §§ I, II; Rev. St. 1925, arts. 7666, 7667, 7673).

Irrigation district taxes assessed and appraised arbitrarily, part of land being grossly overvalued and personal property deliberately undervalued, in violation of Rev. Civ. St. 1925, arts. 7666, 7667, and 7673, and Const. art. 8, §§ 1, 11, held not recoverable, where owner was not given notice required before approval of assessment rolls, notwithstanding owner did not seek relief from board of equalization.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Ward County Irrigation District No. 1 against J. W. Ogburn. Judgment for plaintiff was affirmed by the Court of Civil Appeals (267 S. W. 316), and defendant brings error. Reversed and remanded.

Jno. B. Howard, of El Paso, and Henry Russell, of Pecos, for plaintiff in error.

Birge Holt, of Barstow, for defendant in error.

BISHOP, J. This is a suit by defendant in error, Ward county irrigation district No. 1, a water improvement district for irrigation purposes, incorporated under the laws of this state, against plaintiff in error, J. W. Ogburn, to recover $2,110.10, being the taxes assessed against 466 acres of his land situated in said district, for the years 1919 to 1922, inclusive, together with interest, penalties, and costs, and for foreclosure of tax lien. Plaintiff in error is resisting recovery on the plea that his land has been arbitrarily, grossly, and fraudulently overvalued by the board of equalization of the district, as compared with the value at which other property in the district was assessed for taxes.

In the trial court, judgment was rendered in favor of the irrigation district for the above amount foreclosing lien, which was by the Court of Civil Appeals affirmed. 267 S. W. 316.

Ogburn did not render his property for taxes to the assessor of the district, and the assessor prepared a list of his property upon a regular inventory blank for each of these years, and submitted same to the board of equalization. The board appraised the property at the value placed thereon by the assessor, and placed same upon the general tax rolls without causing notice of its action to be given to Ogburn. No protest was made by Ogburn to the board of equalization.

The facts as to the assessment of property in the district are stated by the Court of Civil Appeals in its opinion as follows:

"Upon this phase of the case the evidence in its material features is undisputed and substantially as follows: For the purpose of land valuation the district has been divided into zones. The first embraces all land within a radius of 1½ miles of the center; the second embraces all land outside the first zone and within a radius of 3½ miles of the center; the third embraces all other land in the district. In the various zones all land planted in fruit and alfalfa is designated as first class; all in cotton, feed, or grain as second class; all uncultivated land as third class. Beginning in 1922, a fourth class was added, which consisted of land unfit for cultivation. Ogburn's land is all in the third zone. Apparently, without reference to improvements or any other consideration except the use to which the land is devoted and the zone in which it is situate, arbitrary valuations are fixed upon the land as follows: $135 per acre for first class land; $96 per acre for land of the second class; land of the third class at $67 per acre. More than 300 acres of Ogburn's land was uncultivated, and about 200 acres thereof was impregnated with alkali, which rendered it unfit for any purpose except grazing. During the years 1919, 1920, and 1921 this uncultivated land was valued at $67 per acre. In 1922 there were 266 acres of the uncultivated land which was valued at $7.50 per acre. During the years indicated, the balance of Ogburn's land was classified in part as first class and part as second class, and valued accordingly. The assessor of the district testified that in valuing Ogburn's land he paid no attention to its real value, but valued it according to its classification under the plan adopted. He said: 'I took into consideration solely whether it was in class 1, 2, or 3, or in zone 1, 2, or 3. * * * In other words, in making up these tax renditions I did not rely upon anything except that schedule, I paid no attention to the values of the land.' According to his own testimony, the uncultivated land belonging to Ogburn did not exceed $7.50 per acre in value, and there are a number of witnesses who placed it at $2 per acre. Several witnesses testified with reference to the value of the first and second class land owned by Ogburn, and placed its value at from $35 to $50 per acre. Appellee offered no evidence to the contrary. The undisputed evidence further shows that all personal property in the district is assessed at one-half its real value. It was shown by the assessor's testimony that $10,000 worth of personal property belonging to the Hillside Irrigation Company was assessed at $5,000."

The Court of Civil Appeals held that the evidence shows "arbitrary gross overvaluation of at least a part of the land and a deliberate undervaluation of the personal property in the district," which was "a fraud upon the taxpayer," and which would ordinarily "subject the action of the board to review by the courts." It, however, held that, as Ogburn had not rendered his property for taxes, he was charged by law with notice that "the assessor would present to the board a list of his property, and the board would appraise it," that it was his duty to go before the board and "at least make an effort to see that his property was appraised upon a proper valuation," and that "the law having provided a special tribunal for the purpose of appraisement and equalization of his property values, and, he having failed to avail himself of the remedy thus provided, and no excuse shown for such failure, he has no remedy in the courts."

With the holding that Ogburn has no remedy in the courts we cannot agree. Our state Constitution, art. 8, § 1, provides that "taxation shall be equal and uniform," and that "all property in this state * * * shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Section 11 of this article provides that "all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer." The law prescribing the manner in which taxes shall be assessed in water

improvement districts provides for a board of equalization and defines their duties. It provides that the board shall require the assessor to bring before them all assessment lists that they may see that all persons have rendered their property at its full value, that they "shall equalize, as near as possible, the value of all property * * * having reference to the location of said property and the improvements thereon situate," and that the assessor, when he delivers to the board his lists of assessment and books, shall also furnish to said board a "list of the property of such persons situated within said district, who have failed or refused to list their property," and that the board shall appraise such property. Provisions of this law, as it appears in articles 7666, 7667, and 7673, Revised Civil Statutes of 1925, are as follows:

"Art. 7666. *Board to Adjourn—Serve Notice.* —In all cases where the board of equalization shall find it their duty to raise the value of any property appearing on the lists or books of the assessor or to add property omitted therefrom, they shall, after having fully examined such lists or books, and corrected all errors appearing therein, adjourn to a day not less than ten nor more than fifteen days from the date of adjournment, such day to be fixed in the order of adjournment, and shall cause the secretary of said board to give a written notice to the owner of such property, or to the person rendering same, of the time to which said board may have adjourned, and that such owner or person may at that time appear and show cause why the value of such property should not be raised, which notices may be served by depositing the same, properly addressed and postage paid, in any post office within the county. (Acts 2nd C. S. 1919, p. 183, § 31.)

"Art. 7667. *Board to Lower Property Value.* —The board of equalization shall meet at the time specified in said order of adjournment and shall hear all persons the value of whose property has been raised; and if said board is satisfied they have raised the value of such property too high, they shall lower the same to its proper value; and said board of equalization, after they have finally examined and equalized the value of all the property on the assessor's lists or books or that may have been placed thereon by said board of equalization, shall approve said lists or books and return them, together with the lists of unrendered property to the assessor that he may make up therefrom his general rolls as required by this act; and when said general rolls are so made the board shall immediately reconvene to examine said rolls and approve the same if found correct; and the action of the board at the meeting last provided for in this article shall be final and shall not be subject to revision by said board or by any other tribunal thereafter. (Id. § 32.)"

"Art. 7673. *Board Convene Annually.*—The board of equalization, after the first year, shall convene annually on the first Monday in June of each year to receive all of the assessment lists or books of the assessor of said district for examination, correction, equalization, appraisement and approval, and for the addition thereto of any property found to be unrendered in said district and shall complete and deliver said lists and rolls to the assessor and collector by the third Monday in July of said year, and the said assessment rolls shall be completed by the assessor and approved by the board of equalization, and returned to said assessor and collector by the first Monday in October of each year after the first assessment as hereinbefore provided. (Id. § 38.)"

It is the duty of the board, in appraising and adding to the assessment lists the property not rendered for taxation, to cause notice to be given to the owner of such property before final action is had, and approval given to the assessment rolls. In this case this was not done. For this reason the holding of the Court of Civil Appeals, that "from this evidence it appears there has been an assessment of Ogburn's property in substantially the manner prescribed by law for property in the district not rendered by the owner or his agent," is erroneous. In appraising the value of this and all other real property, the board of equalization have paid no attention to the value thereof. Without reference to the value of improvements all lands in the district were by the board given an arbitrary value according to the respective zones in which they are situated and the use to which they were put. All personal property was valued at one-half its real value. This action on the part of the board was in violation of the constitutional provision that property should be taxed in proportion to and at its fair value, and that taxation shall be equal and uniform. They have arbitrarily and grossly overvalued his property and discriminated against him. The defendant in error is not entitled to recover on the value placed on his property by the board. Lively v. Railway Co., 120 S. W. 852, 102 Tex. 545; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870. While it is not necessary here to so decide, we are inclined to the opinion that, under the facts in this case, no recovery could be had on the values at which this land was appraised by the board, even had Ogburn been given the notice required by law. The total disregard of the Constitution and laws in appraising property by the special tribunal provided, should, we think, be held to be such jurisdictional defect as should defeat a recovery of the taxes based thereon.

We therefore recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.