**CITY OF AUSTIN, Appellant,**

v.

**Tom H. DAVIS, Appellee.**

**No. 13271.**

Court of Civil Appeals of Texas, Austin.

April 22, 1981.

Rehearing Denied May 20, 1981.

Jerry L. Harris, City Atty., Ernest A. Simon, Asst. City Atty., Austin, for appellant.

James A. Brady, Austin, for appellee.

POWERS, Justice.

The City of Austin, appellant, sued in the 53rd Judicial District Court of Travis County to collect delinquent *ad valorem* taxes assessed by the City and the Austin Independent School District against an airplane owned by appellee, Tom H. Davis. The trial court, sitting without a jury, rendered judgment that appellant take nothing. The judgment was based upon findings of fact and conclusions of law to the effect that: (a) on January 1, 1975, the airplane had acquired a tax situs located outside both taxing authorities and separate from appellee's personal domicile within the geographical limits of the taxing authorities; (b) the two taxing authorities had adopted for 1975 an illegal system of taxation because they had arbitrarily omitted from the tax rolls several kinds of taxable property, resulting in an excessive tax rate and substantial injury to appellee; and (c) the assessed value of the airplane was grossly excessive. We reverse the judgment of the trial court and remand the cause.

## TAX SITUS OF THE AIRPLANE

The facts pertinent to the tax situs of the airplane are essentially undisputed. Davis housed his airplane at Austin Municipal Airport which is located within the Austin city limits and the Austin Independent School District. In 1974, for the first time, Davis was required to pay *ad valorem* taxes assessed by the two taxing authorities against the airplane. He then determined to move it permanently to Tim's Airpark which is located within the same county but outside the boundaries of the two taxing authorities. On December 30, 1974, he removed the airplane from Austin Municipal Airport to Addison Airport near Dallas for scheduled maintenance. The airplane remained at Addison until January 9, 1975, when it was taken to Tim's. There it was housed until February 1977, when it was sold by Davis.

As a general rule personal property in Texas is taxable at the domicile of its owner. *Great Southern Life Ins. Co. v. City of Austin*, 112 Tex. 1, 243 S.W. 778 (1922). Personal property can, however, acquire a tax situs apart from the domicile of the owner if kept in another place with sufficient permanency that it may be fairly regarded as being a part of the general mass of property within that jurisdiction. *State v. Crown Central Petroleum Corp.*, 242 S.W.2d 457 (Tex.Civ.App.—San Antonio 1951, writ ref'd). It is not necessary that the property be situated in the other location with absolute permanency, or that it be situated there with no intention on the part of the owner to remove it. It is sufficient if the property is situated in the separate location with a degree of permanency sufficient to "distinguish it from property which is in the (same location) on a purely temporary or transitory basis." *Greyhound Lines, Inc. v. Board of Equalization*, 419 S.W.2d 345 (Tex.1967).

When a taxing authority introduces the tax rolls into evidence, together with evidence that the tax has not been paid, it makes a *prima facie* case for delinquency. *Alamo Barge Lines, Inc. v. City of Houston*, 453 S.W.2d 132 (Tex.1970). The burden then shifts to the taxpayer to prove that the airplane had acquired a tax situs of its own. Appellee contends that his subjective intention to relocate the airplane permanently at Tim's Airpark, coupled with its actual removal from the two taxing authorities before January 1, 1975, should control the determination of whether the airplane had acquired a tax situs of its own.

The evidence shows that Davis' airplane was not located at Tim's Airpark on January 1, 1975, nor had it been located there before that date. Mr. Davis testified that he informed the people at Austin Municipal Airport that he would not house his airplane there after December 1974. He testified further that in the fall of 1974, he went to Tim's Airpark to see the hangar facilities and "told (the people there) that as of January 1st I was going to move my airplane out there." A rental receipt from Tim's dated January 26, 1975, for Davis' January and February rental was received into evidence.

The evidence will not support the proposition that the airplane had acquired an independent tax situs on January 1, 1975, the only day of the year which the Legislature has set for fixing the questions of tax liability and situs. *See Childress County v. State,* 127 Tex. 343, 92 S.W.2d 1011 (1936); Tex. Rev.Civ.Stat.Ann. art. 7151 (repealed effective January, 1982). There is no probative evidence in the record showing that on January 1, 1975, the airplane in question was in any way distinguishable from other property located at Tim's on a purely temporary or transitory basis; no other location is claimed as a tax situs of the airplane. There is particularly no evidence that the airplane was in "continual use" at Tim's before January 1, 1975. *Greyhound Lines, Inc. v. Board of Equalization, supra.* The evidence shows in fact, that the airplane was not at Tim's on January 1, 1975, and had never before been at that location.

Davis' subjective intent in the matter is not sufficient to create a tax situs in the airplane independent of his personal domicile. *See Crown Central, supra.* The trial court erred, therefore, in its conclusion that the airplane had acquired, on January 1, 1975, a tax situs, outside the two taxing authorities.

## ILLEGAL SYSTEM OF TAXATION

Appellee contends that because bank deposits and other property legally subject to *ad valorem* taxes were omitted from the tax roll by the two taxing authorities, he was taxed at an excessive rate under an illegal tax plan. To support his claim, appellee introduced into evidence several newspaper advertisements by local banks showing their financial condition on December 31, 1974, including the total dollar amount of demand and time deposits held for non-governmental depositors. These newspaper advertisements were allowed into evidence, over appellant's hearsay objection, for the limited purpose of showing that they were published and made public knowledge. From the advertisements, Davis attempted to show that $790,000.00 worth of property had been omitted from the tax rolls, from which he calculated that his taxes would have been $4,500 lower had these deposits been included.

To defend a suit for delinquent taxes on the ground that other taxable property was omitted from the tax roll, a taxpayer has the burden of proving the amount by which his taxes are excessive. *Sam Bassett Lumber Co. v. City of Houston,* 145 Tex. 492, 198 S.W.2d 879 (1947). In *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414 (1954), the Supreme Court of Texas said:

> "In the recent case of *State v. Whittenburg,* [153 Tex. 205] 265 S.W.2d 569, 573, we recognized the right to relief from such an arbitrary plan of taxation. However, if the taxpayer fails to avail himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect ... his right to relief is limited. 'The government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable.' (citations omitted) Once such a plan is put into effect the litigant may defeat the recovery of taxes *only to the extent that they are excessive and he must assume the burden of proving excessiveness.* (citations omitted) .... The difficulties to be encountered in making the necessary proof as a basis for relief is the penalty the taxpayer must pay for sitting idly by

while taxing authorities put into effect a plan of taxation which deliberately permits certain classes of property to escape taxation." (emphasis added).

■ The extent of excessiveness was not shown in the present case, even assuming for discussion that the advertisements were admissible over appellant's hearsay objection. There was no showing as to the ownership of any deposit, the domicile of any depositor, the tax situs of any deposit, or whether any depositor failed to render his deposit for taxation. The newspaper advertisements are thus not probative evidence of the amount of any excessiveness, nor do they tend to prove that appellee sustained an injury in any particular amount. The trial court erred, therefore, in concluding that appellee had suffered substantial injury because taxable property had been omitted from the tax rolls.

## GROSSLY EXCESSIVE VALUATION

■ The trial court found that the assessment placed upon the airplane by the two taxing authorities was grossly excessive. The assessment of $133,130 was based upon a market value estimated by the taxing authorities at $177,507. Davis, in contrast, testified that the value of the airplane on January 1, 1975, was not over $155,000. Appellant offered no evidence as to market value of the airplane, apart from the *prima facie* case made in that respect by the tax rolls previously received into evidence.

Appellant contends on appeal that Davis' testimony was not accompanied by other evidence supporting his naked declaration that the market value of the airplane was not over $155,000. Recognizing perhaps that these arguments go only to the weight of Davis' testimony, appellant's point of error is that the trial court's conclusion "is so against the great weight of the evidence as to be clearly wrong."

■ We cannot say that the trial court was clearly wrong in its conclusion that the assessment in question was grossly excessive. The value of property is normally a matter solely of opinion. An owner may

testify what he believes the market value of his property to be, though he may be unable to qualify as an expert witness so as to give a similar opinion as to the market value of property belonging to another person. When an owner testifies as to his opinion of the value of his property, it is left for the opposing party to attack the owner's opinion by cross-examination or by rebuttal in the form of contrary expert testimony. See *Hillin v. Hagler*, 286 S.W.2d 661 (Tex.Civ. App.—Fort Worth 1956, writ ref'd n. r. e.).

In the present case, Davis' testimony was accompanied by several matters already in evidence: that he had been the owner and operator of the airplane in question for a period of several years and therefore in a position to know it particularly well; he knew the details surrounding the financing and sale of the airplane, and so forth. Appellee was, no doubt, interested in the outcome of the suit but his testimony was clear and positive. We cannot say that the trial court erred in these circumstances. *Hopson v. Gulf Oil Co.*, 150 Tex. 1, 237 S.W.2d 352 (1951).

■ A grossly-excessive assessment does not defeat the right of a taxing authority to tax the property in question. Accordingly, we cancel the assessment of the airplane made by the two taxing authorities in this instance, without prejudice to the right of the authorities to tax the airplane based on a proper assessment. *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378 (1955). We therefore, reverse the judgment of the trial court and remand the cause for a determination of the correct assessment and the entry of a judgment in favor of appellant in an amount determined by that court, based upon the authorities' 1975 tax rates.

Affirmed in Part, Reversed and Rendered in Part and Reversed and Remanded in Part.