Tom H. DAVIS, Petitioner,

v.

CITY OF AUSTIN, Respondent.

No. C–466.

Supreme Court of Texas.

March 17, 1982.

Dissenting Opinion on Denial of
Rehearing May 26, 1982.

James A. Brady, Austin, for petitioner.

Jerry L. Harris, City Atty., Ernest A. Simon, Asst. City Atty., Austin, for respondent.

POPE, Justice.

The City of Austin[1] sued Tom Davis to recover delinquent taxes for 1975 on an aircraft owned by Davis. Davis answered that his aircraft did not have a tax situs within the city. After trial to the court, the judge rendered a take-nothing judgment against the city. In his findings of facts, the trial judge stated that the aircraft departed permanently from Austin in December 1974 and acquired, as of January 1, 1975, a permanent location outside the city and separate from Davis' domicile. The trial judge concluded from the facts that the aircraft did not have a tax situs within the city.[2] The court of civil appeals disagreed and held that no evidence supported the trial court's conclusion. 615 S.W.2d 316, 318–19. We hold that Davis failed to prove that the plane had acquired a tax situs outside of Austin on January 1, 1975, and affirm the judgment of the court of civil appeals.

Tom Davis, a resident of Austin, Texas, owned an aircraft and hangared it with Ragsdale Aviation at the Austin Municipal Airport within the City of Austin. During the fall of 1974, Davis notified Ragsdale that he would not need its facilities after December 30, 1974, and arranged to hangar his aircraft, beginning January 1, 1975, with Aviation Training Center, Inc., at Tim's Airpark located outside Austin's city limits and within the Pflugerville Independent School District. On December 30, 1974, Davis returned to Austin Municipal Airport in his aircraft from a trip to South Dakota and told his pilot to fly the plane to Addison Airpark near Dallas that same day for its regular inspection and maintenance. The plane remained at Addison until January 9, 1975, when it was flown to Tim's Airpark. Except for business and pleasure trips, Davis hangared the plane at Tim's until 1977. The parties stipulated that the plane left Austin Municipal Airport on De-

---

1. The City of Austin also brought suit for the use and benefit of the Austin Independent School District, for whom it collected taxes.

2. The trial court also concluded that the City of Austin had implemented an illegal, discriminatory tax scheme to Davis' detriment, and that the valuation placed on the aircraft was grossly excessive.

cember 30, 1974; it was flown that day to Addison Airpark near Dallas and remained there until January 9, 1975; it arrived at Tim's Airpark on January 9, 1975; and Davis hangared his plane at Tim's Airpark until February, 1977. There is no evidence that the plane had ever been at Tim's prior to January 9, 1975.

In declaring that all property shall be assessed for valuation and taxes paid in the county "where situated," the Texas Constitution adopted the common law rule for determining the tax situs of personalty. *Great Southern Life Insurance Co. v. City of Austin*, 112 Tex. 1, 10, 243 S.W. 778, 780 (1922); Tex.Const. art. VIII, § 11; *see also* Tex.Rev.Civ.Stat.Ann. art. 7153. Under early common law, situs of personal property was inconsequential. Tax units taxed all personalty at its owner's domicile, and the maxim *mobilia sequuntur personam*, "movables follow the person," described the standard for determining the tax situs of personal property. *See Pullman's Car Co. v. Pennsylvania*, 141 U.S. 18, 22–23, 11 S.Ct. 876, 877–78, 35 L.Ed. 613, 616 (1891). Courts recognized, however, that the *mobilia* rule merely expressed a legal fiction that should yield if inconvenience or injustice resulted from its application. *See* 2 T. Cooley, The Law of Taxation § 440 (4th ed. 1924).

■ Our Texas courts, while acknowledging the principle expressed by the *mobilia* rule, have created exceptions to the rule. In Texas, personal property is taxable at the domicile of its owner unless (1) tangible personal property has acquired an actual situs of its own apart from its owner's domicile, *Llano Cattle Co. v. Faught*, 69 Tex. 402, 404–05, 5 S.W. 494, 495 (1897), or (2) a statute directs otherwise, *Great Southern Life Insurance Co. v. City of Austin*, 112 Tex. 1, 10, 243 S.W. 778, 785 (1922); *accord, Nacogdoches Independent School District v. McKinney*, 504 S.W.2d 832, 837–38 (Tex.), *modified on other grounds*, 513 S.W.2d 5 (Tex.1974); *Ferris v. Kimble*, 75 Tex. 476, 480, 12 S.W. 689, 690 (1889).

■ A tax authority establishing its prima facie case in a tax delinquency suit enjoys a rebuttable presumption of law that the personalty in question has a tax situs within the taxing unit's jurisdiction. *Whaley v. Nocona Independent School District*, 339 S.W.2d 265, 267 (Tex.Civ.App.—Fort Worth 1960, writ ref'd). This presumption imposes upon the defendant taxpayer the burden of producing evidence sufficient to justify a finding that the tax situs of the property was outside the tax authority's jurisdiction. *State v. Whittenburg*, 153 Tex. 205, 209, 265 S.W.2d 569, 572 (1954); *see generally Farley v. MM Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975); R. RAY. & W. YOUNG, JR., 1 TEXAS PRACTICE, *Law of Evidence* §§ 41–55 (3d ed. 1980). In light, therefore, of the *mobilia* rule and its exceptions, a taxpayer who believes the tax situs of the tangible personalty in question lies outside the tax authority's jurisdiction must present evidence that (1) the taxed personalty has no acquired situs and its owner is not domiciled within the tax authority's boundaries, (2) the taxed personalty has an acquired situs outside the tax authority's boundaries, or (3) a statute directs that the personalty be taxed elsewhere. *See generally, Empire Gas and Fuel Co. v. Muegge*, 135 Tex. 520, 529, 143 S.W.2d 763, 768 (1940). Otherwise, the rebuttable presumption of law arising from the tax unit's prima facie case becomes conclusive. *Adams v. Royse City*, 61 S.W.2d 853, 855 (Tex.Civ.App.—Dallas 1933, writ ref'd); *see also Keystone Operating Co. v. Runge Independent School District*, 558 S.W.2d 82, 84 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.).

■ Under these principles, the taxing authority established its prima facie case as to every material fact necessary to establish the cause of action when it introduced a copy of the delinquent tax record, certified by the proper taxing authority to be true and correct with the amount stated thereon to be unpaid. *Alamo Barge Lines, Inc. v. City of Houston*, 453 S.W.2d 132, 133–34 (Tex.1970); *Whaley v. Nocona Independent School District*, 339 S.W.2d 265, 267 (Tex. Civ.App.—Fort Worth 1960, writ ref'd); *Stone v. City of Dallas*, 244 S.W.2d 937,

943–44 (Tex.Civ.App.—Waco 1952, writ dism'd); Tex.Rev.Civ.Stat.Ann. arts. 7326, 7328.1. Davis, moreover, testified on cross-examination that he had not paid the 1975 tax.

In order, at that point, to avoid the force of the common law *mobilia* rule that would tax the plane at his residence, Davis had to prove the tax situs of the plane was governed by the acquired situs exception to the *mobilia* rule—the plane was situated outside the Austin taxing district. The force of the *mobilia* rule and its exceptions requires all taxable property to be somewhere on January 1. If the property has not acquired a situs where it is situated, then it is taxed at the owner's residence, which in this instance would be in Austin. In his defense, Davis testified that after receiving and paying 1974 personal property taxes on his plane, he resolved to remove it permanently from the city before January 1, 1975. Davis also testified that he intended to relocate the plane permanently at Tim's Airpark before the 1975 tax year, that he visited Tim's to look at their facilities and found them in good condition, that he told Mr. John Baker at Tim's the plane would be moved there as of January 1, and that Baker replied, "We will be looking for you." Davis produced bills, issued by Aviation Training Center at Tim's Airpark and dated January 27 and 31, 1975, that charged him for hangar rent and aviation fuel during January and February 1975.

■ Davis' intentions and preparatory acts are legally insufficient evidence to establish that his plane had acquired an actual physical situs at Tim's Airpark on January 1, 1975. In order for tangible personal property to acquire an actual situs outside the taxpayer's domicile, the property must be situated at a location with a "degree of permanency" that distinguishes it from personalty having a purely temporary or transitory basis within that jurisdiction. *Greyhound Lines, Inc. v. Board of Equalization*, 419 S.W.2d 345, 349 (Tex.1967). Courts addressing the acquired situs issue usually concentrate on determining whether the personalty in question enjoys that "degree of permanency" necessary to establish actual situs. *See Nacogdoches Independent School District v. McKinney*, 504 S.W.2d 832 (Tex.), *modified on other grounds*, 513 S.W.2d 5 (Tex.1974); *Greyhound Lines, Inc. v. Board of Equalization*, 419 S.W.2d 345 (Tex.1967); *A&M Consolidated Independent School District v. Fickey*, 542 S.W.2d 735 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.); *Brown v. City of Dallas*, 508 S.W.2d 134 (Tex.Civ.App.—Dallas 1974, no writ); *City of Bryan v. Texas Services, Inc.*, 499 S.W.2d 750 (Tex.Civ.App.—Waco 1973, writ ref'd n. r. e.); *Lawson v. City of Groves*, 487 S.W.2d 439 (Tex.Civ.App.—Beaumont 1972, no writ); *Dennis v. City of Waco*, 445 S.W.2d 56 (Tex.Civ.App.—Waco 1969, no writ); *City of Dallas v. Overton*, 363 S.W.2d 821 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); *State v. Crown Central Petroleum Corp.*, 242 S.W.2d 457 (Tex.Civ.App.—San Antonio 1951, writ ref'd). Without fail, however, the courts' inquiries assume that an owner must have physically brought the tangible personalty within the jurisdiction before it can acquire an actual situs there. *See State v. Crown Central Petroleum Corp.*, 242 S.W.2d 457, 461 (Tex.Civ.App.—San Antonio 1951, writ ref'd). This physical presence requirement stems from the dual policies that support the *mobilia* rule's actual situs exception: permitting an authority to tax non-domiciled owners' tangible personal property enjoying that authority's services, and protecting taxpayers by insuring that the property taxed by an acquired situs jurisdiction benefits from that jurisdiction's services. *See Nacogdoches Independent School District v. McKinney*, 504 S.W.2d 832, 837–38 (Tex.), *modified on other grounds*, 513 S.W.2d 5 (Tex.1974).

■ If, as in the present cause, an owner of property does not bring it within a tax authority's boundaries by January 1, and only its owner's intentions and preparatory acts link the personalty to that jurisdiction, we cannot say the tangible personal property will enjoy that authority's benefits or that its owner, consequently, will incur an obligation to pay the authority taxes. The actual situs exception to the *mobilia*

rule, therefore, requires showings that the property in question was located within the situs jurisdiction on or before tax day and that the property was "permanently" located there. *See City of Dallas v. Overton,* 363 S.W.2d 821 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). Here, Davis' evidence fails to address the issue of actual presence. It is only after the proponent of an acquired situs has shown the personalty actually has been within the jurisdiction that intent and preparatory acts become important considerations in determining whether personalty is "permanently" situated within that jurisdiction.

■ We hold, therefore, that Davis presented no evidence justifying the trial court's finding that the aircraft in question had acquired an actual situs at Tim's Airpark on January 1, 1975. Consequently, Davis failed to rebut the city's presumption of law that his plane enjoyed a tax situs in Austin. We accordingly agree with the court of civil appeals that the plane had a tax situs in the City of Austin and affirm that portion of its judgment.

■ The court of civil appeals also held that the trial court was in error in its judgment that the city had arbitrarily omitted taxable property from its tax rolls which resulted in an excessive tax rate and substantial injury to Davis, the taxpayer. We affirm and approve that part of the judgment and the opinion of the court of civil appeals' holding that Davis failed to make the difficult proof required in attacks upon the taxing system. *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414 (1954). We disagree, however, with that part of the opinion of the court of civil appeals' holding that the assessed value of the airplane was grossly excessive.

Davis defended against city's suit for taxes on the airplane for the additional reason that the assessment was grossly excessive. The trial court sustained that defense, and the court of civil appeals also affirmed that part of the judgment. The court of civil appeals did not agree, however, that the grossly excessive valuation resulted in cancellation of the tax. It ordered a remand of the cause to the trial court for the limited purpose of finding a correct assessment and rendering judgment for the city based upon the reassessment. The city has neither attacked that judgment nor the holding of the court of civil appeals that the valuation was grossly excessive. Instead, the city asks for an affirmance of the judgment for the remand.

In this posture of the appellate record, we must affirm the court of civil appeals' judgment, including its decision that the valuation was grossly excessive. On remand, this unattacked judgment will be the law of this case. Hatchell, *The Doctrine of "Law of the Case,"* in STATE BAR OF TEXAS, APPELLATE PROCEDURE IN TEXAS §§ 21.1, 21.5, 21.7 (2d ed. 1979).

■ We do not, however, approve the holding that an excessive assessment should be treated the same as a *grossly* excessive assessment. The proof in this case shows only an excessive assessment. Davis showed that the market value of the airplane was no more than $155,000, but the taxing authorities valued it at $177,507. An examination of this court's prior decisions shows that grossly excessive evaluations have been on the order of some multiple of the personalty's market value. *City of Waco v. Conlee Seed Co.,* 449 S.W.2d 29 (Tex.1969) (thirteen times); *Dallas County v. Dallas National Bank,* 142 Tex. 439, 179 S.W.2d 288 (1944) (five times); *French Independent School District v. Howth,* 134 Tex. 211, 134 S.W.2d 1036 (1940) (ten times); *Ogburn v. Ward County Irrigation District No. 1,* 280 S.W. 169 (Tex.Comm'n App.1926, holding approved) (nine times); *see,* HOWELL, 21 TEXAS PRACTICE, *Property Taxes* § 189 (1975).

This court in *City of Waco v. Conlee Seed Co.,* 449 S.W.2d 29 (Tex.1969), collected the cases which illustrate the differences between excessive valuations and those which are characterized as grossly excessive. One reason for the law's requirement that the taxpayer prove a *grossly* excessive valuation is that an attack upon the taxing authority's judgment is a collateral attack

upon a quasi-judicial function. *City of Waco v. Conlee Seed Co.*, 449 S.W.2d 29 (Tex.1969); *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378 (1955); *State v. Whittenburg*, 153 Tex. 205, 209–11, 265 S.W.2d 569, 572–73 (1954). Another reason for proof of gross excessiveness is that the proof must be strong enough to constitute evidence of fraud or illegality on the part of the taxing authority. *State v. Whittenburg*, 153 Tex. 205, 209–11, 265 S.W.2d 569, 572–73 (1954).

The judgment of the court of civil appeals is affirmed.

McGEE, Justice, dissenting.

I respectfully dissent from the majority's holding that Davis failed to present any evidence the plane had acquired a separate tax situs. The majority focuses on the fact that the plane was not physically present at Tim's on or before January 1, and holds such presence in the taxing jurisdiction was required as a matter of law. The cases cited by the majority do not address this issue, and I have found no authority for such a rigid rule.

Tangible personal property acquires a tax situs separate from its owner's domicile when it is more or less permanently located there on the designated tax date. *E.g., Nacogdoches Independent School District v. McKinney*, 504 S.W.2d 832 (Tex.), *modified on other grounds*, 513 S.W.2d 5 (Tex.1974). Actual physical presence on that date, however, is not required and is not controlling. For example, personal property is taxable in the jurisdiction of its acquired situs even though it is temporarily absent on the day of assessment. *See Nacogdoches Independent School District v. McKinney, supra.* Conversely, it is not taxable where physically present when its presence is merely temporary or transitory. *A & M Consolidated*

*Independent School District v. Fickey*, 542 S.W.2d 735 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.); *see State v. Crown Central Petroleum Corp.*, 242 S.W.2d 457 (Tex.Civ. App.—San Antonio 1951, writ ref'd). The controlling issue is permanence of location, and it is the permanence, rather than presence, which must exist on the tax date in order for the property to acquire a tax situs there for the following year. *See Brock & Co. v. Board of Supervisors*, 8 Cal.2d 286, 65 P.2d 791, 795 (1937).[1]

The physical location of the property *prior* to the tax date is, of course, relevant in determining the issue of permanence *on* the tax date. However, I have not found a single case, and the majority cites none, where a court has held prior physical presence is necessary as a matter of law in order to apply the acquired situs exception to the *mobilia* rule. In order to justify such a holding, prior physical presence should be *essential* to the effectuation of the policies which support the acquired situs exception. These policies, as stated by the majority, are: permitting an authority to tax non-domiciled owners' tangible personal property enjoying that authority's services, and protecting taxpayers by ensuring that the property taxed by an acquired situs jurisdiction benefits from that jurisdiction's services. But prior physical presence is not essential to these policies because taxes are assessed prospectively. Such presence will not ensure that the property will enjoy the benefits and protection of the taxing jurisdiction for the year following the assessment date, nor will the property's absence ensure that it will not enjoy those services.[2]

Davis presented other evidence which supports a finding that the plane was more or less permanently located at Tim's Air-

---

**1.** These principles have now been codified in section 21.02 of the Texas Tax Code (effective January 1, 1982).

**2.** It has been suggested that physical presence on or before the tax date is necessary in order to facilitate the assessment of taxes. While the tax situs of property is determined as of January 1 of the tax year, that determination need not be made *on* January 1. The taxpayer has a

period of time after that date, generally three to four months, in which to render his property to the proper authority. The actual assessment is not made until some time later. Furthermore, personal property which is not rendered by the taxpayer may be placed on the "unrendered tax roll" when it is discovered. *See generally* Howell, 21 Texas Practice, *Property Taxes* §§ 225–26 (1975).

park on January 1, 1975. He testified he intended to remove the plane from Austin's tax jurisdiction before the beginning of the 1975 tax year and to permanently relocate the plane at Tim's as of January 1, 1975. He notified Ragsdale Aviation in Austin that he would no longer hangar his plane there after December 1974, he made arrangements for hangar facilities at Tim's beginning January 1, 1975, and he produced bills from Tim's showing he had been charged for hangar rent from January 1, 1975. It was undisputed that he permanently removed his plane from Austin on December 30, 1974, that the plane was physically present at Tim's beginning January 9, 1975, and that it remained at Tim's until February 1977.

A jurisdiction's right to assess taxes on personal property is based on a reciprocal obligation to provide protection and other services relating to the property. *See Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905); Annot., 2 A.L.R. 4th 432, 438 (1980). As between states, a jurisdiction may not tax property owned by one of its residents if the property is permanently removed from the jurisdiction, and thus cannot receive the services of the jurisdiction, because such would amount to a taking of property without due process of law. *Union Refrigerator Transit Co. v. Kentucky, supra.* While the Due Process Clause of the Fourteenth Amendment does not dictate the result in this case, we have recognized that the underlying principles are significant in determining the tax situs of property as between different tax jurisdictions within the state. In *Nacogdoches Independent School District v. McKinney, supra,* we refused to allow the owner's domicile jurisdiction to tax property located outside the jurisdiction, stating:

> The acquired situs exception to the *mobilia* rule discussed and applied in this case finds justification in the sound theory that property which enjoys the protection of the jurisdiction in which it is more or less permanently located should be made to contribute to the expenses incident to its protection in that jurisdic-

tion. . . . Whether one jurisdiction has this greater contact with the property and its uses than another jurisdiction may be considered.

504 S.W.2d at 838. Davis' plane had no contact with the Austin taxing jurisdiction during the year for which the taxes were assessed. On the contrary, Davis intended that the plane would receive the protection and services for the 1975 tax year from Tim's Airpark, outside the Austin taxing district, and those services were in fact provided.

This Court has emphasized that the *mobilia* rule, applied by the majority, is but a "legal fiction ... 'intended for convenience, and not to be controlling where justice does not demand it.'" *Greyhound Lines, Inc. v. Board of Equalization,* 419 S.W.2d 345, 349 (Tex.1967) (quoting Cooley, The Law of Taxation § 440 (4th ed. 1924)); *see also Nacogdoches Independent School District v. McKinney, supra.* In my opinion, justice does not demand that Davis pay taxes to Austin for services he unquestionably did not receive.

SPEARS and WALLACE, JJ., join in this dissent.

RAY, Justice, dissenting.

The dissenting opinion delivered on March 17, 1982, is withdrawn and the following opinion is substituted.

I join the dissent for the reason that I have found no Texas rule which requires that the Davis airplane had to be physically located at Tim's Airpark on January 1, 1975. The tax situs for this aircraft is a question of fact. In the present case I am convinced that the objective evidence, as distinguished from any subjective intent, established that the Davis airplane had acquired a tax situs outside the City of Austin. The manifest intent of Davis to locate his aircraft at Tim's Airpark is exhibited by the objective evidence that the plane left Austin before the end of 1974 and would be hangared at Tim's Airpark beginning January 1, 1975. The airplane had left the City of Austin en route to Tim's Airpark. *State*

*v. Crown Central Petroleum Corp.*, 242 S.W.2d 457, 462 (Tex.Civ.App.—San Antonio, 1951, writ ref'd). I would hold that the objective evidence supported the findings of the trier of fact.