Opinion issued March 26, 2009


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-08-00234-CV
__________
 
STARFLIGHT, L.L.C., Appellant
 
V.
 
HARRIS COUNTY APPRAISAL DISTRICT AND HARRIS COUNTY
APPRAISAL REVIEW BOARD, Appellees
 

 
 
On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2006-76682
 

 
 
DISSENTING OPINION 
          The majority errs in holding that the evidence is legally sufficient to support
the trial court’s finding that, as of January 1, 2006, appellant, Starflight 50, L.L.C.
(“Starflight”), had located its 1988 Desault-Breguet Falcon 50 aircraft in Harris
County, Texas for “more than a temporary period.” The majority further errs in
affirming the trial court’s judgment in favor of appellees, Harris County Appraisal
District (“HCAD”) and Harris County Appraisal Review Board (“HCARB”) that the
aircraft was subject to property taxation in Harris County for the 2006 tax year. 
Accordingly, I respectfully dissent.
Standard of Review
          We must sustain a legal sufficiency or “no-evidence” challenge if the record
shows one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. 
City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal
sufficiency review, “a court must consider evidence in the light most favorable to the
verdict, and indulge every reasonable inference that would support it.” Id. at 822. 
If there is more than a scintilla of evidence to support the challenged finding, we must
uphold it. Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998). “‘[W]hen the evidence offered to prove a vital fact is so
weak as to do no more than create a mere surmise or suspicion of its existence, the
evidence is no more than a scintilla and, in legal effect, is no evidence.’” Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983)). However, if the evidence at trial would enable
reasonable and fair-minded people to differ in their conclusions, then the fact finder
must be allowed to do so. Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003). A reviewing court cannot substitute its
judgment for that of the fact finder, so long as the evidence falls within this zone of
reasonable disagreement. Keller, 168 S.W.3d at 822.
Temporary PeriodIn Texas, generally, “tangible personal property is taxable by a taxing unit if
. . . it is located in the unit on January 1 for more than a temporary period.” Tex. Tax
Code Ann. § 21.02(a)(1) (Vernon 2008). January 1 is “the only day of the year
which the Legislature has set for fixing the questions of tax liability and situs.” City
of Austin v. Davis, 615 S.W.2d 316, 319 (Tex. Civ. App.—Austin 1981), aff’d, Davis
v. City of Austin, 632 S.W.2d 331 (Tex. 1982). Thus, the issue presented to this Court
is whether, in the words of HCAD and HCARB, “the aircraft was located in Harris
County on January 1[, 2006] for longer than a temporary period . . . .” HCAD and
HCARB assert that the evidence shows that the aircraft’s “presence” in Harris County
as of January 1, 2006 “was not transitory or limited,” and the majority agrees. 
          In support of its conclusion that “Starflight’s airplane was present in Harris
County, Texas for more than a temporary period as of January 1, 2006,” the majority
emphasizes that Starflight, in August 2006, admitted that the aircraft was located in
Harris County on January 1, 2006; had a “non-written agreement” to house, and did
house, the aircraft at Hobby Airport after Hurricane Katrina; used the plane to serve
only the owners and partners of its two clients, Versabuild and Versabar, which has
had a “sales operation” in Harris County since 2002; has not rebuilt the aircraft’s
hanger in New Orleans; and has admitted that “[t]he aircraft was being hangared at
Hobby Airport … until adequate hangar space can be built in New Orleans.” The
majority also notes that “a majority percentage of the plane’s 2005 flights departed
from Houston” and Starflight employees, including the plane’s pilot, who keeps
aircraft documents at his Houston home, have been relocated to Houston after
Hurricane Katrina. Moreover, the majority notes that Starflight, which is authorized
to do business under the laws of the State of Texas, “offered no documentation at trial
indicating its business transactions occurring at offices other than the Houston
addresses of its affiliated companies or that it rendered the plane for tax purposes at
any other locale.
          Much of this evidence concerns matters that occurred after January 1, 2006 and
none of it supports a logical inference that Starflight had located its aircraft in Harris
County on “more than a temporary” basis as of January 1, 2006. Although some of
the evidence does serve to prove that the aircraft’s location for the 2007 tax year was
in Harris County, Starflight does not contest this fact.
          However, focusing on the 2006 tax year and the critical day of January 1, 2006,
it matters not that Starflight had yet to rebuild its hanger in New Orleans, that several
employees and the aircraft’s pilot had evacuated here, or that the pilot currently keeps
the aircraft’s documents in a house in Pearland. Nor does it matter that Starflight is
authorized to do business in Texas or that it uses the aircraft to serve Versabar and
Versabuild. Moreover, although 105 out of the aircraft’s 305 departures in 2005 were
out of Texas, the Texas departures are completely understandable given the chaos
following Hurricane Katrina. As explained at trial by Phillip Rundle, one of
Starflight’s member managers, from the time after Hurricane Katrina until January 1,
2006, 
The aircraft was flying employees of Versabar and Versabuild, family
members, dogs and cats, all over the country to try to keep everybody’s
family together. Flying back and forth to New Orleans. I flew back
there. It was pretty unbelievable. FEMA had come in and taken our
generators and our forklifts and diesel tanks. And FEMA grabbed them
and took them and went off with them.
 
In fact, following Hurricane Katrina, the aircraft had also been in Champaign, Illinois
on a “temporary basis.” Because one of Rundle’s partners had evacuated to a small
town outside of Champaign, “the plane was up there a lot and sometimes it was
hangared in Champaign.”  
          The aircraft was certainly present in Harris County on January 1, 2006, and
Starflight arranged to house the plane at Hobby Airport. However, the undisputed
fact remains that the only reason that Starflight flew its aircraft to Harris County at
the very end of August 2005 was to avoid Hurricane Katrina, one of the worst natural
disasters suffered in American history, and its aftermath. At trial, Rundle testified
that in the four months following Hurricane Katrina and up through January 1, 2006,
Starflight fully intended to return the aircraft to the Lake Front Airport in New
Orleans, Louisiana, where it had been housed prior to September 2005. In fact,
Starflight, Versabar, and Versabuild had made attempts to repair and rebuild their
offices in New Orleans and had even rented space at Louis Armstrong Airport in New
Orleans. Unfortunately, however, the chaos following Hurricane Katrina and the lack
of hangar space at Louis Armstrong Airport made it impossible to permanently move
the aircraft back to New Orleans as of December 5, 2007, when Rundle testified at
trial. In sum, Rundle testified:
And there’s absolutely, in my opinion, a hundred percent certainty that
prior to Hurricane Katrina we were in New Orleans on a permanent
basis. After Hurricane Katrina, I still say a hundred percent[,] we were
on a temporary basis from September 1, [2005] to [December 31, 2005]. 
We were located here, but it was on a temporary basis. 
 
. . . .
 
I mean, how much more temporary can you get under the circumstances
of a hurricane. I mean, it’s like, if that ain’t temporary, I don’t know
what is. 

          The trial court, as fact finder, was not free to disregard Starflight’s evidence of
the circumstances surrounding the evacuation of its aircraft to Harris County and
Rundle’s undisputed testimony that the aircraft, as of January 1, 2006, was not
located in Harris County for more than a temporary period. See City of Keller, 168
S.W.3d at 816–17. Moreover, an appellate court, conducting a legal sufficiency
review, “cannot disregard undisputed evidence that allows of only one logical
inference.” Id. at 814. Here, there is no evidence to support the trial court’s finding
contrary to Starflight’s contextual evidence and Rundle’s uncontradicted testimony. 
Accordingly, I would hold that the evidence is legally insufficient to support the trial
court’s finding that Starflight’s “aircraft was located in Harris County, Texas, on
January 1,2006 for more than a temporary period.”
          In support of its holding to the contrary, the majority relies upon City of Dallas
v. Overton, 363 S.W.2d 821 (Tex. Civ. App.—Dallas 1962, writ ref’d n.r.e.) and
Davis v. City of Austin, 632 S.W.2d 331 (Tex. 1982). In Overton, the City of Dallas
sued Overton, a Dallas resident, contending that Overton’s airplanes, housed at the
Addison Airport in Addison, Texas, were subject to ad valorem taxes under “the
common law ‘maxim mobilia sequuntur personam’ (moveables follow the person),
“meaning that all movable property was considered to have its tax situs at the
domicile of its owner.” 363 S.W.2d at 823. The court rejected this contention and
held that “tangible personal property acquires a tax situs in a jurisdiction apart from
its owner if it is kept there with sufficient permanency that it may fairly be regarded
as being a part of the general mass of property within the jurisdiction.” Id. at 825. 
Noting that the airplanes were “not transitory nor temporarily kept at Addison,” the
court held that Overton’s airplanes had acquired a permanent status in Addison,
Texas, rather than Dallas, Texas, and the City of Dallas lost the case. Id. at 826–827. 
Overton is simply not applicable to the instant case.
          Davis, likewise, is wholly inapplicable. Davis, who owned an airplane and
hangared it at the Austin Municipal Airport, planned to move the airplane to Tim’s
Airpark outside Austin’s city limits for the upcoming 1975 tax year. Davis, 632
S.W.2d at 332. On December 30, 1974, the airplane was flown to Addison Airpark
near Dallas, and, on January 9, 1975, it arrived at Tim’s Airpark. Id. at 332–33. 
Because Davis failed to prove that the airplane had acquired an actual situs at Tim’s
Airpark on January 1, 1975, the court held that the airplane had its tax situs in the
City of Austin. Id. at 335. It noted that the actual situs exception to the mobilia rule
requires a showing that the property in question was located within the situs
jurisdiction on or before tax day and that the property was “permanently” located
there. Id. at 334–35. Had Davis shown that the airplane actually had been at Tim’s
Airpark on or before January 1, 1975 and had acquired situs there, his intent and
preparatory acts would have been “important considerations in determining whether”
the airplane had been “‘permanently’ situated” there. Id. at 335. The court’s
discussion of actual situs in regard to the mobilia rule has absolutely nothing to do
with the issue presented to this Court.  
Conclusion
          Again, I would hold that the evidence is legally insufficient to support the trial
court’s finding that Starflight’s “aircraft was located in Harris County, Texas, on
January 1, 2006 for more than a temporary period.” Accordingly, I would reverse the
trial court’s judgment and render judgment in favor of Starflight. 
 
  
Terry Jennings
                                                                 Justice 
Panel consists of Justices Jennings, Hanks and Bland.
Justice Jennings, dissenting.