

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EXLP LEASING, LLC AND EES LEASING, LLC, | § | |
| | § | |
| Appellants/Cross-Appellees, | § | No. 08-13-00359-CV |
| | § | |
| v. | § | Appeal from the |
| WARD COUNTY APPRAISAL DISTRICT, | § | 143rd Judicial District Court |
| | § | |
| Appellee/Cross-Appellant. | § | of Ward County, Texas |
| | § | (TC#12-09-22893-CVW) |
| | § | |

## **O P I N I O N**

This is an ad-valorem tax case of first impression. The issues in this appeal, like those in

three other cases on our docket, concern the taxation of natural gas pipeline compressor packages.[1]

---

[1] These cases are: (1) EXLP Leasing LLC and EES Leasing LLC v. Loving County Appraisal District, No. 08-13-00348-CV; (2) MidCon Compression, LLC v. Reeves County Appraisal District and Loving County Appraisal District, No. 08-13-00322-CV; and (3) Valerus Compression Services, a Texas Limited Partnership, and Valerus Compression Services Management, LLC, a Texas Limited Liability Company, General Partner v. Reeves County Appraisal District and Loving County Appraisal District, No. 08-13-00366-CV. Although this case differs both factually and procedurally from the others, it raises many of the issues present in those cases. The resolution of these issues is important to the parties involved in all the cases on our docket because millions of dollars are at stake. *See, e.g.,* Ender Reed & Connor McNally, *Heavy Equipment Tax Loophole Being Exploited*, TEX. ASS'N OF CNTYS. (March 26, 2015), http://county.org/Legislative/news/Pages/County%20Issues%2003-27-15/Companies-Exploit-Heavy-Equipment-Tax-Loophole.aspx (last visited September 21, 2015). It is also important to other entities not parties to these cases but with a vested interest in their outcome. One such entity is United Rentals, Inc., "the world's largest equipment-rental provider," who submitted an amicus curiae brief in this case and in the others supporting the "[c]ompressor [c]ompanies."

These compressor packages facilitate the production and processing of natural gas by regulating the pressure necessary to extract it and move it. In this case, the trial court ruled—as urged by Appellants/Cross-Appellees—that sixteen compressor packages located in Ward County on January 1, 2012 qualified as heavy equipment. But the trial court ruled—as urged by Appellee/Cross-Appellant—that taxable situs lay in Ward County and that the statutory formulas for calculating the market value of heavy equipment inventory held for lease or rent and the tax due on it were unconstitutional as applied. On appeal, Appellee/Cross-Appellant challenges the heavy-equipment declaration and Appellants/Cross-Appellees challenge the situs and unconstitutional declarations. We affirm, in part, and reverse and render, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants/Cross-Appellees—EXLP Leasing LLC and EES Leasing LLC[2]—are in the business of leasing compressor packages to two entities: EXLP Leasing Operating and Exterran Energy Solutions, LP, respectively. These four companies are subsidiaries of "Exterran" and their business relationships are governed by two Equipment Master Rental Agreements. Pursuant to these agreements, EXLP Leasing Operating and Exterran Energy Solutions, LP, lease the compressor packages to third parties at an intercompany rate set by Exterran's treasury department. The sixteen compressor packages in dispute here were leased from Appellants' pool of approximately 1025 compressor packages assigned to their Midland County facility. In 2011, Appellants received $15,632,670.00 in rental and lease income from this pool of compressor packages.

That same year, the Legislature amended the statutes governing the taxation of heavy

---

[2] For easy reference, and unless otherwise indicated, we will refer to EXLP Leasing and EES Leasing collectively as Appellants.

2

equipment inventory: Sections 23.1241 and 23.1242 of the Texas Tax Code. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 322, §§ 1, 2, 3, 2011 TEX.GEN.LAWS 938, 938-40. Of particular importance were changes to the statutory definitions of "dealer," "dealer's heavy equipment inventory," "sales price," and "total annual sales." *See id.* at §§ 1, 2, 2011 TEX.GEN.LAWS 938, 938-40; TEX.TAX CODE ANN. § 23.1241(a)(1)(defining "dealer"), TEX.TAX CODE ANN. § 23.1241(a)(2)(defining "dealer's heavy equipment inventory"), TEX.TAX CODE ANN. § 23.1241(a)(7)(defining "sales price"), TEX.TAX CODE ANN. § 23.1241(a)(9)(defining "total annual sales")(West 2015). These changes, which became effective January 1, 2012, altered the formulas for calculating the market value of heavy equipment inventory and the tax due on it. *See id.* at §§ 9, 10, 2011 TEX.GEN.LAWS 938, 941; TEX.TAX CODE ANN. § 23.1241(b)(establishing formula for calculating market value of heavy equipment inventory for ad valorem purposes), TEX.TAX CODE ANN. § 23.1241(b-1)(clarifying that market value of item of heavy equipment lease or rented then sold is the sales price plus the lease and rental payments), TEX.TAX CODE ANN. § 23.1242(a)(4)(defining "unit property tax factor"), TEX.TAX CODE ANN. § 23.1242(b)(establishing formula for calculating the unit property tax of each item of heavy equipment)(West 2015).

Previously, only dealers holding items of heavy equipment inventory for sale (or for lease or rent with an option to purchase) could calculate the market value of their inventory based on sales for the previous tax year, divided by twelve. *See* Act of May 20, 1997, 75th Leg., R.S., ch. 1184, § 2, 1997 TEX.GEN.LAWS 4564, 4565-68 (amended 1999); Act of May 28, 1999, 76th Leg., R.S., ch. 1550, §§ 1, 2, 1999 TEX.GEN.LAWS 5337, 5337 (amended 2011). But beginning January 1, 2012, dealers holding items of heavy equipment inventory for lease or rent (not subject

3

to an option to purchase) could calculate the market value of their inventory based on lease or rental payments for the previous tax year, divided by twelve. Thus, as amended, the formulas for calculating the market value of heavy equipment inventory and the tax due on it encompassed the *total revenue* generated by a dealer's entire inventory—through sales and lease or rental payments—for the previous tax year, divided by twelve. *See* TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241(b-1), 23.1242(a)(4), 23.1242(b).[3]

---

[3] These subsections read as follows:

> [23.1241](b) For the purpose of the computation of property tax, the market value of a dealer's heavy equipment inventory on January 1 is the total annual sales, less sales to dealers, fleet transactions, and subsequent sales, for the 12-month period corresponding to the preceding tax year, divided by 12.

> [23.1241](b-1) For the purpose of the computation of property tax on the market value of the dealer's heavy equipment inventory, the sales price of an item of heavy equipment that is sold during the preceding tax year after being leased or rented for a portion of that same tax year is considered to be the sum of the sales price of the item plus the total lease and rental payments received for the item in the preceding tax year.

> .           .           .

> [23.1242](a)(4) 'Unit property tax factor' means a number equal to one-twelfth of the preceding year's aggregate ad valorem tax rate at the location where a dealer's heavy equipment inventory is located on January 1 of the current year.

> [23.1242](b) Except for an item of heavy equipment sold to a dealer, an item of heavy equipment included in a fleet transaction, an item of heavy equipment that is the subject of a subsequent sale, or an item of heavy equipment that is subject to a lease or rental, an owner or a person who has agreed by contract to pay the owner's current year property taxes levied against the owner's heavy equipment inventory shall assign a unit property tax to each item of heavy equipment sold from a dealer's heavy equipment inventory. In the case of a lease or rental, the owner shall assign a unit property tax to each item of heavy equipment leased or rented. The unit property tax of each item of heavy equipment is determined by multiplying the sales price of the item or the monthly lease or rental payment received for the item, as applicable, by the unit property tax factor. If the transaction is a lease or rental, the owner shall collect the unit property tax from the lessee or renter at the time the lessee or renter submits payment for the lease or rental. The owner of the equipment shall state the amount of the unit property tax assigned as a separate line item on an invoice. On or before the 10th day of each month the owner shall, together with the statement filed by the owner as required by this section, deposit with the collector an amount equal to the total of unit property tax assigned to all items of heavy equipment sold, leased, or rented from the dealer's heavy equipment inventory in the preceding month to which a unit property tax was assigned. The money shall be deposited by the collector to the credit of the owner's escrow account for prepayment of property taxes as provided by this section. An escrow account required by this section is used to pay property taxes levied against the dealer's heavy equipment inventory, and the owner shall fund the

4

Relying on the amendments to Sections 23.1241 and 23.1242, Appellants claimed that they were dealers of heavy equipment inventory, that their pool of 1025 compressor packages in Midland County qualified as heavy equipment, and that their market value was $1,302,722: the sum of $15,632,670.00 in lease and rental payments attributable to this pool divided by 12, rounded down. In 2012, Appellants began paying the taxes due on this amount on a monthly basis to the taxing authority in Midland County. As to the sixteen compressor packages located in Ward County, Appellants calculated their market value to be $26,527.00 but ascribed no value to them in renditions filed with Appellee/Cross-Appellant—Ward County Appraisal District (hereinafter, "WCAD").

WCAD asserted that the sixteen compressor packages operating in Ward County on January 1, 2012 were taxable as business personal property. *See* TEX.TAX CODE ANN. § 23.01(a)(West 2015)("Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1."). Consequently, WCAD placed the compressor packages on its appraisal roll and appraised them at market value. For the 2012 tax year, the sixteen compressor packages were valued at $4,651,200.00. Appellants protested the determinations that the compressor packages belonged on WCAD's appraisal rolls and the valuations ascribed to them. The appraisal review board ruled against Appellants, and they sought judicial review of these rulings.

In the trial court,[4] WCAD argued that Sections 23.1241 and 23.1242 were unconstitutional on their face and as applied because they permit taxation of leased heavy equipment inventory at a

___

escrow account as provided by this subsection.

TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241(b-1), 23.1242(a)(4), 23.1242(b).

[4] Appellants' two lawsuits were consolidated into one.

value bearing no relationship to any measure of its market value. WCAD also argued that, even if these formulas passed constitutional muster, Appellants could not take advantage of them because their compressor packages did not qualify as "heavy equipment" as that term is defined in Section 23.1241(a)(6). WCAD further argued that any tax due was payable to Ward County, not Midland County, because the compressor packages were located in Ward County on January 1, 2012 and had been there for more than a temporary period.

Appellants, of course, advocated the opposite and moved for summary judgment on these three issues. They succeeded in part, obtaining summary judgment declaring that the compressor packages qualify as heavy equipment:

> [T]he Court finds that the Dealer Heavy Equipment Inventory Statute, Section 23.1241 of the Texas Tax Code, applies to Exterran's compressors. The motion is, therefore, GRANTED in part and DENIED in part.
>
> Specifically, the Court finds that there is no genuine issue of material fact that the compressors are self-powered under Section 23.1241(a)(6). The parties did not dispute that the compressors each weighed over 1,500 pounds and were intended to be used for mining or industrial uses under Section 23.1241(a)(6). Exterran's motion for summary judgment is otherwise denied.

The other two issues—taxable situs and the constitutionality of the formulas—were litigated in a bench trial. The trial court found against Appellants on these issues, signing a take-nothing judgment in WCAD's favor:

> IT IS THEREFORE ORDERED THAT the Plaintiffs take nothing and that judgment is entered for the Defendant.
>
> IT TS FURTHER ORDERED THAT Texas Tax Code §§ 23.1241, 23.1242 are held to be unconstitutional as applied to the Plaintiffs' compressor packages at issue in this matter. The subject property at issue in this matter had situs in Ward County, Texas as of January 1, 2012.

Although Appellants requested the issuance of findings of fact and conclusions of law, the trial

court did not oblige.[5]   Both parties timely appealed.

## HEAVY EQUIPMENT

In its sole cross-issue on appeal, WCAD contends that the trial court erred in rendering summary judgment that "the compressors are self-powered under Section 23.1241(a)(6)."   We disagree.

### *Standard of Review*

We review a summary judgment *de novo*.   *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156-57 (Tex. 2004).   A movant is entitled to summary judgment if it proves that there are no genuine issues of material facts and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Two Thirty Nine Joint Venture*, 145 S.W.3d at 157.   Once a movant has proved it is entitled to summary judgment, the non-movant bears the burden of responding to the motion and presenting to the trial court any issues that would preclude summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

WCAD does not argue on appeal that summary judgment was improper because genuine issues of material fact exist.   Rather, WCAD argues that the compressor packages are not heavy equipment as a matter of law.   Appellants urge the contrary.   Essentially, each party insists its respective construction of Section 23.1241(a)(6) is the correct one.

### *Applicable Law*

Section 23.1241(a)(6) defines "heavy equipment" as:

[S]elf-propelled, self-powered, or pull-type equipment, including farm equipment or a diesel engine, that weighs at least 1,500 pounds and is intended to be used for agricultural, construction, industrial, maritime, mining, or forestry uses.

TEX.TAX CODE ANN. § 23.1241(a)(6).   Although the term "heavy equipment" is defined, the

---

[5] Appellants do not complain of the trial court's failure to issue the requested findings and conclusions.

terms "self-propelled," "self-powered," and "pull-type" are not. In construing statutory terms—a question of law subject to *de novo* review—our primary objective is to determine and give effect to the Legislature's intent. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747, n.23 (Tex. 2012). To determine that intent, we first begin by analyzing the terms themselves. *Id*. at 747. If a term in a statute is undefined and has not acquired a technical meaning, we use its common, ordinary meaning. *Id.* When a word has multiple common meanings, we give it the meaning most consistent with the statutory context in which it is used. *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180-81 (Tex. 2013).

### *Discussion*

The sixteen compressor packages in dispute qualify as heavy equipment because they are self-powered, as that term is commonly and plainly understood.[6]

The plain and common meaning of the term "self-powered" is "having its own power or propelling force." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2061 (2002). The term "powered" is commonly understood to mean "to supply with power, esp. mechanical power." AMERICAN HERITAGE COLLEGE DICTIONARY 1092 (4th ed. 2002). The term "power" is defined in numerous ways, reflecting its wide-ranging, far-reaching meaning: (1) "[t]he energy or motive force by which a physical system or machine is operated[;]" (2) "[t]he capacity of a system or machine to operate[;]" (3) "[e]lectrical or mechanical energy, esp. as used to assist or replace human energy[;]" and (4) "[o]perated with mechanical or electrical energy in place of bodily

---

[6] We note that one of our sister courts reached the opposite conclusion in a similar case. *See Valerus Compression Servs. v. Gregg Cnty. Appraisal Dist.*, 457 S.W.3d 520 (Tex.App.--Tyler 2015, no. pet.). In that case, the Tyler Court of Appeals held that the appellants did not meet their summary judgment burden to establish that their compressors packages were "self-powered" because they failed to adduce evidence explaining how the equipment functioned. *Id.* at 530-31. The court reasoned that, "in the absence of such an explanation[,]" it was "impossible to know if the equipment is 'self-powered[.]'" *Id.*

8

exertion." AMERICAN HERITAGE COLLEGE DICTIONARY at 1092. And one of the more recognized definitions of "equipment" is "the set of articles or physical resources serving to equip a person or thing as . . . the implements used in an operation or activity . . . ." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 423 (11th ed. 2003).

The Legislature was aware of the common meanings of these words when defining the term "heavy equipment." In defining the term, the Legislature identified farm equipment and diesel engines as exemplars. These pieces of equipment are alike in that they permit humans to work more efficiently and faster by harnessing mechanical power. In defining the term "heavy equipment," the Legislature also identified the types of industries in which these pieces of equipment were to operate, including: agriculture, construction, mining, and forestry. These industries benefit greatly from the efficiencies made possible by mechanical power.

In light of the function of mechanized equipment in industrial settings and the common meanings of the terms "power," "powered," "self-powered," and "equipment," the context of Section 23.1241 indicates that the Legislature intended "self-powered" to mean a piece of a machinery or equipment supplied with mechanical power through an internal motor or engine. Here, Appellants adduced uncontroverted evidence that an internal combustion engine inside each compressor package creates the mechanical power required to operate it.

WCAD acknowledges that the compressor packages are powered by internal combustion engines but contends that, from an engineering standpoint, they are not self-powered because they do not have an integrated fuel system and instead must rely on a separate external fuel source.[7] In other words, WCAD is urging us to construe the term self-powered in a narrower and more

_____

[7] WCAD concedes that the compressor packages in issue weigh 1,500 pounds each and are intended to be used for industrial or mining uses.

9

technical sense and, in support of its argument, cites authority from other jurisdictions intimating that a piece of equipment is not self-powered if it lacks an internal power source. *See, e.g., United States v. Williams*, 650 F.Supp.2d 633, 648 (W.D. Ky. 2009)(explaining that "bird dog" electronic tracking devices, unlike those hard-wired to an automobile, are self-powered transmitters with a limited battery affixed to an automobile's exterior by magnets); *Allied Asphalt Paving Co. v. Vill. of Hillside*, 731 N.E.2d 425, 429 (Ill.App.Ct. 2000)("crushing plant" used to recycle discarded asphalt into reprocessed asphalt did not qualify as construction equipment because a crushing plant, among other characteristics, was neither self-powered nor self-propelled and had to be hard-wired to existing power lines or an adjacent generator housed in a trailer); *Rickman v. Deere & Co.*, 36 F.3d 1093, *1 (4th Cir. 1994)(forage wagon was not self-powered because "it is pulled by a tractor, which also supplies the power, through a rotating driveline or 'power take off shaft' (PTO shaft), to operate the machinery of the forage wagon[]").

But we are under no obligation to adopt the construction urged by WCAD because there is no indication that the Legislature intended to define the term in such a manner. As mentioned above, the Legislature presumably knew of the various meanings of "self-powered," "powered," "power," and "equipment" in normal usage when it enacted Section 23.1241 in 1997. *See* Act of May 20, 1997, 75th Leg., R.S., ch. 1184, § 2, 1997 TEX.GEN.LAWS 4564, 4564-69 (amended 1999). Since then, the Legislature has chosen to continue using the term "self-powered" without defining or distinguishing it, even though afforded the opportunity to do so in 2011 when it amended the statutory definition of "heavy equipment." *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 322, §§ 1, 2, 3, 2011 TEX.GEN.LAWS 938, 938-40. "If the Legislature intended to . . . [define] the term[] ["self-powered"] . . . [in the manner urged by WCAD][,] we believe it would

10

have done so." *Traxler*, 376 S.W.3d at 747. That the Legislature has not strongly suggests that the term has not acquired a technical meaning. *See id.*

WCAD also contends that the Legislature could not have intended the term self-powered to mean "any type of equipment that has an engine or motor" because otherwise there would have been no need to include the term "self-propelled" in the statutory definition, since "all self-propelled equipment . . . [weighing] more than 1,500 pounds undoubtedly has an engine or motor." But in advancing this argument, WCAD has fallen prey to the logical fallacy know as false equivalence: one shared trait between two objects demonstrates equivalence. In this case, the shared trait is an engine or motor. Thus, while it may be true that all self-propelled equipment can be classified as self-powered equipment because they are both powered by an engine or motor, the converse is not necessarily true. The compressor packages in issue here prove this. Their internal combustion engines power them but do not propel them. In short, the terms "self-powered" and "self-propelled" are not equivalent and, therefore, not redundant.

The trial court did not err in ruling that the compressor packages meet the statutory definition of heavy equipment as that term is defined under Section 23.1241(a)(6) and in granting summary judgment on this issue in Appellants' favor.

WCAD's cross-issue is overruled.[8]

## MARKET VALUE

In their first issue, Appellants argue that the trial court erred in declaring that Sections 23.1241 and 23.1242 are unconstitutional as applied to the sixteen compressors packages in

---

[8] Because we have concluded that the trial court correctly ruled that the compressors qualify as heavy equipment under Section 23.1241 because they are self-powered, we need not address WCAD's argument that the compressors do not qualify as heavy equipment because they are not "self-propelled" or "pull-type."

11

dispute.[9]   We agree.

## *Standard of Review*

We presume a tax statute enacted by the Legislature is constitutional, and a party challenging the constitutionality of a tax statute bears the burden to demonstrate its unlawfulness. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934, 936 (Tex. 1996).   If a tax statute is reasonably susceptible to different constructions, one of which renders the statute constitutionally valid and one invalid, then we must adopt the construction upholding the validity of the enactment.   *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

## *Applicable Law*

Section 1 of article VIII of the Texas Constitution establishes the constitutional standard for taxation:

> Sec. 1.   (a)   Taxation shall be equal and uniform.
>
> (b)   All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, *which shall be ascertained as may be provided by law*. [Emphasis added].

TEX.CONST. art. VIII, § 1(a) and (b).   In accordance with these constitutional directives, ad valorem tax rates must be uniform for all types of property and ad valorem tax values must be based on the "market value" of the property.   *Enron Corp.*, 922 S.W.2d at 935; *Nootsie*, 925 S.W.2d at 661.

But the constitution does not prescribe a particular formula or standard for determining the "market value" of property.   *Enron Corp.*, 922 S.W.2d at 936.   Instead, it directs that "value" is

---

[9]   As Appellants correctly point out in their brief, Sections 23.1241 and 23.1242 "stand or fall together."

to "be ascertained as may be provided by law." *Enron Corp.*, 922 S.W.2d at 936, *citing* TEX.CONST. art. VIII, § 1 (b). "The phrase 'as may be provided by law,' when used in a constitutional provision establishing a general legal principle or administrative framework, has been held to 'clearly vest[ ] the Legislature with the authority to exert substantial control over the mechanics of [the subject matter addressed].'" *Travis Cent. Appraisal Dist. v. FM Properties Operating Co.*, 947 S.W.2d 724, 733 (Tex.App.--Austin 1997, writ denied). Because there are no specific requirements in the constitution for determining the market value of property, "the Legislature may classify property differently in arriving upon its market value[,]" "as long as the classifications are not unreasonable, arbitrary, or capricious."[10] *Enron Corp.*, 922 S.W.2d at 936. If the Legislature adheres to this maxim in "classify[ing] property differently in arriving upon its market value[,]" "there is no constitutional impediment to utilizing differing methods for *determining market value* for ad valorem tax purposes." *Id.* [Emphasis in the original]. Accordingly, "the Legislature has the constitutional authority to provide for a method of determining the *market value of inventory* that differs from the method for arriving upon the market value of other property." [Emphasis added]. *Id.*

### Discussion

WCAD has failed to demonstrate that Sections 23.1241 and 23.1242 are unconstitutional as applied to the sixteen compressor packages in dispute.[11]

---

[10] Appellants, without citing any supporting authority, assert that arbitrary-and-capricious review equates to rational-basis review. Although WCAD does not address Appellants' assertion in its briefing, twelve other appraisal districts have in an amicus curiae brief they submitted in this case. The amici parties contend that the two standards are not equivalent. According to them, arbitrary-and-capricious review is narrower than rational-basis review. But we need not decide the answer to this question because it is not germane to the resolution of this case.

[11] Appellants assert that WCAD raised a facial, as opposed to an as-applied, challenge to Sections 23.1241 and 23.1242 by contending that lease revenue divided by 12 can never equal market value. "A facial challenge claims that a statute, by its terms, always operates unconstitutionally." *Tenet Hospitals Ltd. v. Rivera*, 445 S.W.3d 698, 702

## 1. In Proportion to its Value

WCAD argues that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value because, for ad valorem purposes, "market value" means "fair market value," or "fair cash value" as calculated under the "willing buyer-willing seller" test. Under this test, market value corresponds to:

> [T]he price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.

*City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954); *see* TEX.TAX CODE ANN. § 1.04(7)(A)-(C)(West 2013)(defining "market value" in a similar vein). The Legislature, according to WCAD, acted unreasonably, arbitrarily, and capriciously by ignoring the willing buyer-willing seller test when amending Sections 23.1241 and 23.1242 because, under these statutes, the compressor packages are valued at less than 1% of their market value. WCAD's argument is unavailing.

To succeed in arguing that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value, WCAD must demonstrate that the only constitutionally-acceptable method for determining the market value of heavy equipment inventory held for lease or rent as a whole is to ascertain the prices at which each item of inventory

---

(Tex. 2014). "By contrast, an as-applied challenge asserts that a statute, while generally constitutional, operates unconstitutionally as to the claimant because of her particular circumstances." *Id.* WCAD counters that Appellants are incorrect because they "ignore[] the facts in the record and the argument of [its] counsel at trial" in challenging the constitutionality of the statutes. Sections 23.1241 and 23.1242, according to WCAD, do not always operate unconstitutionally because there are circumstances under which an item of heavy equipment inventory can equal market value, *i.e.*, at the end of its useful life or if leased and then sold during the same year. Because the sixteen compressor packages in dispute here did not have any of these characteristics, WCAD maintains that Sections 23.1241 and 23.1242 operate unconstitutionally as to them. Based on the explanation offered by WCAD, we conclude that it has raised an as-applied constitutional challenge to these statutes.

14

would sell for in an arms-length transaction and aggregate them. *See FM Properties*, 947 S.W.2d at 733. Stated another way, the appraisal districts must prove that it is unreasonable, arbitrary, or capricious for the Legislature to value heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. *See id*. WCAD has failed to so prove. Put simply, it is not unreasonable, arbitrary, or capricious to determine the market value of heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. In fact, valuing heavy equipment inventory in this manner makes sense because inventory, by definition, is different than other types of property.

Inventory is an idle stock of physical goods a business holds on hand in the regular course of business awaiting consumption at a future point in time. *See FM Properties.*, 947 S.W.2d at 728, 730. Although each item of inventory has some economic value in an abstract sense, an owner does not capture the maximum economic value of each item while it sits idly generating no revenue. The maximum economic value of an item of inventory is unlocked when it generates revenue. Correspondingly, because inventory is not intended to be held for any period of time, capturing its value is difficult given that inventory levels tend to fluctuate significantly throughout the year. *Enron Corp.*, 922 S.W.2d at 939-40; *Expo Motorcars, L.L.C. v. Harris County Appraisal Dist.*, No. 01-08-00473-CV, 2009 WL 2232017, *4 (Tex.App.--Houston [1st Dist.] July 23, 2009, pet. denied)(mem. op.). Thus, given that the maximum economic value of inventory is tied to the revenues it generates and that value is a point-in-time estimate, it is neither unreasonable nor arbitrary nor capricious for the Legislature to require use of a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease or rent.

This method for valuing inventory of large, expensive goods is neither novel nor unique.

15

The Legislature, "understand[ing] and correctly appreciate[ing] the needs of" businesses dealing with this type of inventory has responded by passing laws "directed to problems made manifest by experience[,]" *i.e.*, the special provisions permitting inventory involving motor vehicles, watercraft and outboard motors, manufactured housing, and—of course—heavy equipment, to be valued using a 12-month trailing revenue-based method. *See Enron Corp.*, 922 S.W.2d at 934 [Internal quotation marks and citations omitted]; TEX.TAX CODE ANN. § 23.121 (motor vehicles), TEX.TAX CODE ANN. § 23.124 (watercraft and outboard motors), TEX.TAX CODE ANN. § 23.1241 (heavy equipment), TEX.TAX CODE ANN. § 23.127 (manufactured housing). For inventory consisting of motor vehicles, watercraft and outboard motors, and manufactured housing, revenues are based on sales. *See* TEX.TAX CODE ANN. §§ 23.121, 23.124, 23.127. This sales-based method for ascertaining the market value of inventory has been upheld as constitutionally permissible because it is reasonable—not arbitrary or capricious—to require dealers to pay taxes only on inventory actually sold. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5 (upholding the constitutionality of Section 23.121's method for calculating the market value of motor vehicle inventory as of January 1 of a tax year based on actual sales from the previous calendar year because a sales-based method, as opposed to single-date valuation method, achieves a more accurate reflection of the market value of motor vehicle inventory, since inventory levels fluctuate widely over the course of a year).

For heavy equipment inventory, revenues are based on sales and lease or rental payments. *See* TEX.TAX CODE ANN. § 23.1241. WCAD does not contend that the sales-based portion of the formula for calculating the market value of heavy equipment inventory is unconstitutional, likely because such a contention would be futile. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5.

Instead, it contends that the lease- (and rental-) based portion of the formula is unconstitutional as applied to the sixteen compressor packages in dispute because "none of [them] . . . would sell for one-twelfth of the preceding year's lease or rental payments . . . ." But just as it is eminently reasonable to require dealers of inventory held for sale in the ordinary course of business to pay taxes only on inventory actually sold, it is eminently reasonable to require dealers of inventory held for lease or rent in the ordinary course of business to pay taxes only on inventory actually leased or rented. The nature of the beast dictates this outcome.

An operating lease or rental transaction involving an item of heavy equipment is the purchase of a service produced by the lessor, not the purchase of a sale of a good. The lessee or renter is purchasing the right to use an item of heavy equipment for a specific period of time, and the item's value is derived from its use at that given moment in time. To the owner of an item of inventory producing lease or rental income, the value of such an item is the present worth of the future payments expected over the item's remaining service life. *See FM Properties*, 947 S.W.2d at 734. Given this economic reality, it is reasonable to calculate the market value of such an item, the efficiency and service life of which is declining during the lease or rental period, based on the current income generated by the item. By directing that the value of heavy equipment inventory held for lease and rent is equivalent to the income generated by the lease and rental payments, Section 23.1241 and 23.1242 "essentially require[] nothing more than that the inventory of a business should, for taxation purposes, be considered as income-producing property and its market value determined pursuant to the income approach." *See id.* Arguably, employing a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease is inherently

17

fairer and more likely to reflect the market value of that inventory than other approaches.[12]

Indeed, WCAD's proposed method for determining the market value of Appellants' inventory—the sum of the prices each item of inventory would command if sold in arms-length transactions regardless of income generated by the inventory as a whole—is arguably unreasonable. Why insist on taxing an item of heavy equipment *inventory held for the sole purpose of generating income* based on a formula better suited for determining the market value of *individual goods held for sale*?

The answer, according to WCAD, is because Sections 23.1241 and 23.1242 create a loophole permitting dealers of heavy equipment inventory held for lease or rent to escape taxation by mandating that the value of inventory as a whole does not include items not leased or rented, even though these items have substantial value if sold or owned outright. But that result is not determinative of whether Sections 23.1241 and 23.1242 are arbitrary, unreasonable, or capricious classifications by the Legislature. This is because the Legislature has the authority to implement tax policy inuring to the benefit of the taxpayer rather than to the state. *See Enron Corp.*, 922 S.W.2d at 939. As explained above, it is not unreasonable, arbitrary, or capricious to calculate the taxable value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented.

WCAD, citing *FM Properties,* maintain that "[a]n amount that no willing buyer would pay for a property is simply not market value." *See FM Properties*, 947 S.W.2d at 732, *citing City of*

---

[12] WCAD argues that Appellants' "lease rates are not from arms-length market leases and bear no relation to market value" because they are artificially set at an intercompany rate by Exterran's treasury department. WCAD likens Appellants' business dealings "to a homeowner selling his house that is valued at $100,000 to a trust he heads for $1,000 and arguing that the market value is $1,000 for taxation purposes." We hesitate to conclude that Appellants have engaged in artifice. Although it is unclear from the record what factors are used to calculate the lease rate for their compressor packages, WCAD's comparison is not an apt one for many reasons, but mainly because a third party is involved in leasing the equipment, and the revenue from these third-party transactions is what determines the equipment's market value for ad valorem purposes.

*Saginaw v. Garvey Elevators, Inc.*, 431 S.W.2d 575, 579 (Tex.Civ.App.--Fort Worth 1968, writ ref'd n.r.e.). But *FM Properties* does not hold, and does not stand for the proposition, that the market value of inventory held for the sole purpose of generating income is determined by the sum of the prices each item of inventory would command if sold in arms-length transactions. In fact, the court in *FM Properties* renounced this approach in valuing real estate inventory held for sale in the ordinary course of a trade or business. The court concluded that valuing inventory as a unit based on "what a purchaser would pay for property at the present time in a single transaction," rather than on "what might be paid by dozens or even hundreds of purchasers if the property were sold in pieces over an extended period of time[,]" "is inherently fairer and more likely to produce true market value than other approaches such as multiplying the total number of inventory items on hand by the retail price of each individual item." *FM Properties*, 947 S.W.2d at 729, 731. It was in this context in which the court opined that the "number of lots times retail price of each lot" formula did not capture the inventory's "[m]arket value, as determinable through application of the 'willing buyer-seller test'" because this valuation method produced "[a]n amount that no willing buyer would pay for . . . [the] entire inventory of lots at a given point in time." *See id*. at 732.

*FM Properties* actually supports the proposition that it is constitutionally permissible to determine the market value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented. *FM Properties*, 947 S.W.2d at 731-34 (upholding the constitutionality of statutory method for calculating the market value of real estate inventory based on what a purchaser would pay for all of the inventory in a single transaction because this valuation method achieves a more accurate reflection of the market

value of real estate inventory held for as a unit for the purpose of generating income, since method, among other reasons, more painstakingly accounts for the net income that a potential purchaser might anticipate deriving from the purchase of the property, after the deduction of development and marketing costs and with due regard for the time value of money, rather than merely recognizing a gross income figure that might be anticipated from the sale of each particular parcel over a designated period of time without accounting for the inherent costs). Viewing *FM Properties* in this light is consistent with the constitutional requirement that value is "ascertained as may be provided by law" and is in accord with the supreme court's pronouncement in *Enron Corp.* that inventory may be valued differently than other types of property, as long as the standard for ascertaining its value is neither unreasonable, arbitrary, or capricious.

WCAD also claims that Appellants "ha[ve] stipulated that the value derived by the subject statute is less than 1% of the market value for this property." But WCAD mischaracterizes the nature of Appellants' stipulations and misstates their effect. Appellants' did not stipulate that the value of the sixteen compressor packages as calculated under Section 23.01, as opposed to Section 23.1241, is the measure of their *true market value*. Instead, Appellants merely stipulated that, if the compressor packages were valued on a unit-by-unit basis, the values ascribed to each item would differ depending on the statute employed:

> If it is determined that the subject property does not qualify for Dealer's Heavy Equipment Inventory under Tax Code § 23.1241 or that Tax Code § 23.1241 is unconstitutional, the subject property is valued as follows if calculated as business personal property inventory pursuant to Tax Code § 23.01 and § 23.12 for the 2012 tax year. In the alternative, if it is determined that the subject property does qualify for Dealer's Heavy Equipment Inventory under Tax Code § 23.1241 and that Tax Code § 23.1241 is constitutional--and although EES and EXLP believe Section 23.1241 adopts a pooled inventory approach to taxation as opposed to a unit by unit approach--the subject property would be valued on a unit by unit basis as follows if calculated as Dealer's Heavy Equipment Inventory pursuant to Tax

20

Code § 23.1241 based on 2011 and 2012 revenues.

Based on the foregoing discussion, we conclude that WCAD has failed to demonstrate that Sections 23.1241 and 23.1242, as applied in this case, run afoul of the constitutional requirement that all property be taxed in proportion to its value. Accordingly, the trial court erred in concluding otherwise.

## 2. Equal and Uniform

WCAD also asserts that Sections 23.1241 and 23.1242 violate the constitutional requirement that taxation be equal and uniform because these statutes favor leased compressors over owned compressors even when the compressors are alike in all relevant respects. WCAD's assertion is without merit.

The constitutional mandate of equality and uniformity requires only that all persons falling within the same class be taxed alike. *Hurt v. Cooper*, 130 Tex. 433, 440-41, 110 S.W.2d 896, 901 (1937). In other words, a tax system must operate equally within each class. The relevant class here is dealers of heavy equipment inventory. Sections 23.1241 and 23.1242 apply even-handedly to this class because the amount of tax due on this type of inventory is always based upon the previous year's revenue, divided by 12. Because there is no evidence that this valuation method is not applied equally and uniformly to dealers of heavy equipment inventory, there is no disparate treatment within the class. That Sections 23.1241 and 23.1242 may produce disparate appraisal values among differently-situated taxpayers does not prove that are unequal and non-uniform. We conclude that WCAD has failed to prove that Sections 23.1241 and 23.1242, as applied in this case, violate the constitutional requirement that taxation be equal and uniform. Accordingly, the trial court erred in concluding otherwise.

21

Appellants' first issue is sustained.

## TAXABLE SITUS

In their second issue, Appellants contend that the trial court erred in declaring that taxable situs of the sixteen compressor packages in dispute lay in Ward County. We disagree.

### *Applicable Law*

Although not identified as such in the trial court's judgment, Section 21.02(a) of the Tax Code is the statutory basis for the trial court's conclusion that taxable situs lay in Ward County. This statute, which codifies the so-called "mobilia" rule and its exceptions,[13] provides that:

> (a) [Except for certain inapplicable exceptions,] tangible personal property is taxable by a taxing unit if:
>
> (1) it is located in the unit on January 1 for more than a temporary period;
>
> (2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;
>
> (3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or
>
> (4) the owner resides (for property not used for business purposes) or maintains the owner's principal place of business in this state (for property used for business purposes) in the unit and the property is taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this subsection.

TEX.TAX CODE ANN. § 21.02(a)(1)-(4)(West 2015); *see* TEX.CONST. art. VIII, § 11 (requiring that property be assessed for taxation and that taxes be paid in the county where it is situated).

As a general rule, courts presume that "the personalty in question has a tax situs within the taxing unit's jurisdiction." *Davis*, 632 S.W.2d at 335. To rebut this presumption, the taxpayer must present evidence that the property has not acquired situs in the jurisdiction and the taxpayer is not domiciled there, or that the property has acquired situs outside the tax authority's boundaries,

---

[13] *See Davis v. City of Austin*, 632 S.W.2d 331 (Tex. 1982).

22

or that a statute directs the property be taxed elsewhere. *Davis*, 632 S.W.2d at 335. Otherwise, the presumption becomes conclusive. *Id.*

### *Discussion*

Appellants have failed to rebut the presumption that, on January 1, 2012, taxable situs of the sixteen compressor packages in dispute lay in Ward County.

Appellants do not contend that Ward County cannot tax the compressor packages because they neither conduct business nor maintain facilities in Ward County. Nor do Appellants contend that the compressor packages were not located in Ward County for a sufficient amount of time to comply with the requirements of Section 21.02(a). To the contrary, Appellants assert that fixing situs in accordance with Section 21.02(a) would undermine Section 23.1241's purpose, *i.e.*, to value heavy equipment inventory as a whole and eliminate administrative, financial, and logistical impediments for both dealers of heavy equipment and taxing authorities. These potential pitfalls, according to Appellants, do not arise when situs is fixed at a dealer's "business address" or "business location" as mandated by Section 23.1241(f) and the conforming administrative form and manual promulgated by the comptroller. Proceeding under this theory, Appellants maintain that taxable situs of the sixteen compressor packages in dispute lies in Midland County because this is where they "maintain[] a yard from which its inventory in the Permian Basin region is leased, to which leased compressors are returned after leases expire, and where the inventory in the area is serviced." Appellants are mistaken.

Nothing in Section 23.1241(f) refers to taxable situs. The statutory language does not unambiguously direct that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. Indeed, the statute does not even mandate that the

23

dealer file the form with the appraisal district in which the inventory's business location is situated. So far as "business location" is concerned, Section 23.1241(f) fails to define this term and to distinguish between a dealer's principal place of business and other business locations. Nor, as the Tyler Court of Appeals noted in analyzing this statute, does it "provide instruction for a business to determine where, among different counties, it must pay taxes." *Valerus*, 457 S.W.3d at 526. Section 23.1241(f) merely directs a dealer of heavy equipment to file an inventory declaration form and identifies the information that the dealer must report to the taxing authorities:

> The comptroller by rule shall adopt a dealer's heavy equipment inventory declaration form. Except as provided by Section 23.1242(k), not later than February 1 of each year, or, in the case of a dealer who was not in business on January 1, not later than 30 days after commencement of business, each dealer shall file a declaration with the chief appraiser and file a copy with the collector. The declaration is sufficient to comply with this subsection if it sets forth:
>
> (1) the name and business address of each location at which the declarant conducts business;
>
> (2) a statement that the declarant is the owner of a dealer's heavy equipment inventory; and
>
> (3) the market value of the declarant's heavy equipment inventory for the current tax year as computed under Subsection (b).

TEX.TAX CODE ANN. § 23.1241(f).

Likewise, nothing in the form and the manual promulgated by the state comptroller refers to taxable situs. *See* Dealer's Heavy Equipment Inventory Tax Statement, http://www.comptroller.texas.gov/taxinfo/taxforms/50-266.pdf; Heavy Equipment Dealer's Special Inventory, http://window.texas.gov/taxinfo/proptax/pdf/96-560.pdf. Form 50-266 (the form) is a tax statement a dealer of heavy equipment must file in conjunction with the tax due under Section 23.1242. *See* Dealer's Heavy Equipment Inventory Tax Statement, "General

24

Instructions". The accompanying instructions (the manual) identify the six steps a dealer must undertake "to calculate, report, and pay inventory property taxes." *See* Heavy Equipment Dealer's Special Inventory, p. 9. Significantly, neither the form nor the manual contains any information whatsoever helpful in determining taxable situs under Section 23.1241(f). *See* Dealer's Heavy Equipment Inventory Tax Statement; Heavy Equipment Dealer's Special Inventory. For example, neither document directs that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. *See* Dealer's Heavy Equipment Inventory Tax Statement; Heavy Equipment Dealer's Special Inventory. And although both documents direct a dealer to file with the county tax office a tax statement for each business location along with prepayment of taxes, neither one identifies where those taxes are to be paid. *See* Dealer's Heavy Equipment Inventory Tax Statement, "General Instructions" & "Where to File;" Heavy Equipment Dealer's Special Inventory, pgs. 10-13. Due to these shortcomings in both documents, they cannot be considered the comptroller's construction of Section 23.1241(f). *See Valerus*, 457 S.W.3d at 525 (concluding that similar shortcoming in a related form, Form 50-265, Dealer's Heavy Equipment Inventory Declaration, rendered the form nothing more than a form and precluded its consideration as the comptroller's construction of Section 23.1241(f)).

Appellants have failed to demonstrate that the Legislature intended to fix taxable situs of heavy equipment inventory at a dealer's "business address" or "business location." Accordingly, the trial court did not err in concluding that taxable situs of the sixteen compressor packages in dispute lay in Ward County. *See EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, No. 14-14-00268-CV, 2015 WL 5025534, at *6-*7 (Tex.App.--Houston [14th Dist.] Aug. 25, 2015, no

pet. h.)(holding that Section 23.1241(f) does not address the taxable situs of heavy equipment inventory); *Valerus,* 457 S.W.3d at 523-27 (same).[14]

Appellants' second issue is overruled.

## CONCLUSION

The portion of the trial court's judgment declaring Sections 23.1241 and 23.1242 to be unconstitutional as applied to Appellants' compressor packages is reversed, and judgment is rendered that these two statutes are not unconstitutional as applied. In all other respects, the trial court's judgment is affirmed.

September 23, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

---

[14] The *EXLP* court did not reach the constitutionality issue of Section 23.1241 and Section 23.1242, but rather concludes that neither party carried "their respective summary judgment burden[.]" *EXLP*, 2015 WL 5025534, at *1. The case was remanded to the trial court for "further proceedings on the constitutionality of sections 23.1241 and 23.1242 as applied to the compression unit rental inventories at issue" because the trial court had "insufficient information to determine as a matter of law" that the statute's method of calculation "was not 'based on the[ir] reasonable market value.'" *EXLP*, 2015 WL 5025534, at *5-*6, *citing Enron*, 922 S.W.2d at 935.